UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DEBRA A. NOVAK, et al.**

   **Plaintiffs,**   **CIVIL ACTION NO. 06-CV-14862**

 vs.

          **DISTRICT JUDGE ARTHUR J. TARNOW**

**JP MORGAN CHASE BANK,**  **MAGISTRATE JUDGE MONA K. MAJZOUB**
**NA,**
   **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION:** Defendant JPMorgan Chase Bank, N.A.'s Motion to Compel Arbitration and Abate Pending Action filed on April 25, 2007 (docket no. 14) should be GRANTED and Defendant's Motion to Strike Certain Exhibits to "Plaintiff's (sic) Response to Defendant's Motion, and Subsequent To Plaintiffs' Response to Compel Arbitration and Abate Pending Action" should be DENIED. Plaintiffs' request for attorneys fees and costs should be DENIED and Plaintiffs' request to deem their Requests for Admission to Defendant admitted should be DENIED.

**II. REPORT:**

  *A. Procedural History and Facts*

  This is an action brought for violation of the Electronic Fund Transfer Act, 15 U.S.C. 1693f(1) after Plaintiffs discovered allegedly unauthorized withdrawals, including by forged checks, from their jointly held account. (Docket no. 1). Plaintiffs also make claims for conversion, recredit of account and negligence under Michigan's Uniform Commercial Code and common law negligence. After Plaintiffs informed Defendant of the unauthorized activity on the account and

filed suit on October 26, 2006, the parties engaged in settlement negotiations, during which time Plaintiffs extended the time for Defendant to respond to their Complaint. Defendant filed its Answer on January 25, 2007. (Docket no. 5). The parties filed witness lists on April 20, 2007. (Docket nos. 12, 13). Defendant filed its Motion to Compel Arbitration and Abate Pending Action on April 25, 2007. (Docket no. 14). Plaintiffs filed their Response on May 9, 2007. (Docket no. 15). On May 15, 2007 Defendant filed an Errata to its Motion to Compel Arbitration and Abate Pending Action and included a Deposit Agreement and Signature Card that was referenced, but not included with the original motion due to Defendant's clerical error. (Docket no. 16). Defendant filed a Reply to Plaintiffs' Response on May 16, 2007. (Docket no. 17).

On May 25, 2007 Plaintiffs filed a Response to Errata to Defendant's Motion and Subsequent to Plaintiffs' Response to Compel Arbitration and Abate Pending Action. (Docket no. 18). On June 7, 2007 Defendant filed a second motion, its Motion to Strike Certain Exhibits to Plaintiff's (sic) Response to Defendant's Motion and Subsequent to Plaintiffs' Response to Compel Arbitration and Abate Pending Action. (Docket no. 19). Plaintiffs filed a Response to Defendant's Motion to Strike on June 21, 2007. (Docket no. 20). The matter has been reassigned and referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A). (Docket nos. 21, 22). The Court ordered that the Motions will be decided on the briefs. (Docket no. 23). Because Defendant's Motion seeks a stay or involuntary dismissal of the case, the undersigned submits these proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

### B.   *Defendant's Errata to Motion to Compel Arbitration*

Defendant filed an Errata to its Motion to Compel Arbitration. (Docket no. 16). Under Rule 60, Fed. R. Civ. P., the Court has the authority to correct clerical mistakes in the record and errors

arising therein from oversight or omission at any time of its own initiative. Defendant's Motion and Brief in Support referenced the Deposit Agreement and Signature Card as Exhibit A to the Malicke Affidavit at Exhibit 1 to Defendant's Motion to Compel Arbitration; however the wrong exhibit was submitted. (Docket no. 14-3). Defendant's Errata substitutes the Deposit Agreement and Signature Card for the incorrect exhibit. Defendant's Errata does not introduce any new issues and Defendant filed the Errata within six days of receiving Plaintiffs' Response pointing out the error. (Docket no. 15 ¶¶ 2, 4). For these reasons, the record is corrected to include the Deposit Agreement and Signature Card as Exhibit A to Defendant's Exhibit 1. (Docket no. 14-3). Plaintiffs filed a Response to Errata to Defendant's Motion to Compel Arbitration on May 25, 2007 reiterating issues raised in its Response Brief and addressing the documents provided by Defendant's Errata. (Docket no. 18).

    ***C.  The Parties' Agreement to Arbitrate is Governed by the Federal Arbitration Act***

Defendant in its Motion argues that the parties have a valid arbitration agreement that mandates arbitration of Plaintiffs' claims and asks the Court to stay this cause of action and compel the parties to proceed with arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. Plaintiffs argue that there is no evidence that they are bound by the arbitration agreement and, even if they are, Defendant waived its right to arbitrate when it delayed filing its Motion to Compel Arbitration.

Defendant asserts that the Account Rules and Regulations at all times relevant to the account at issue in this dispute contained a binding arbitration clause. Defendant alleges that the operative language in place at the time of the allegations in Plaintiffs' Complaint is the following:

> Either party may, prior to rendering of a judgment on any claim, dispute or controversy of any nature, whether asserted individually or jointly ("Claim") by either

> you or Bank One against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, including Claims regarding the applicability of this arbitration provision or the validity of the entire Agreement, elect to have such claim resolved by binding arbitration by the National Arbitration Forum under the Code of Procedure in effect at the time the Claim is filed.

(Docket no. 14 ¶ 6). This substantive language appears in the Deck Affidavit Ex. C, Account Rules and Regulations dated January 18, 2005 (docket no. 14-8 at 19) and is the same language effective May 1, 1998 and in effect at the time of the February 20, 2001 signature card[1]. (Docket nos. 14-6, 16-3).

The FAA applies to arbitration provisions in a transaction involving interstate commerce and provides that such a provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. §§ 1, 2. Defendant provides a series of arbitration provisions in effect during the time that the alleged events took place giving rise to Plaintiffs' claims and each of the provisions contains a statement incorporating the FAA and stating that the transaction involves interstate commerce. *See* Deck Aff. at Exs. A, B, C, D, E[2] (docket nos. 14-6, 14-7, 14-8 at 19, 14-9 at 21, 14-10 at 34). Neither party argues that the arbitration provision is ineffective because the transaction does not involve interstate commerce. The district court has the authority to stay "any suit or proceeding brought in any of the courts of

---

[1]Where Defendant reproduced this language in its Motion to Compel Arbitration at ¶ 6, they used "Bank One" throughout the provision. In reproductions of the language which appear as Exhibits to Defendant's Motion to Compel Arbitration, the actual language refers only to "Bank." The reference to Bank One is consistent with the remainder of the record, indicating Bank One's logo on the Exhibit to Errata and the chronology which Plaintiffs provide as Exhibit H to their Response.

[2]Defendant references an Exhibit F in the affidavit, however no Exhibit F was included with the filing.

the United States upon any issue referable to arbitration under an agreement in writing for such arbitration" upon application of one of the parties. *See* 9 U.S.C. § 3. There is already a pending action in this Court therefore the Court should proceed under 9 U.S.C. § 3.

A request for relief under either section 3 or section 4 of the FAA "shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983). If there is no showing of disputed factual questions going to the legal issue of arbitrability, an evidentiary hearing is not required as a predicate for the district court to issue a stay order, as long as the parties are provided an opportunity to fully brief the issues to the district court. *See Commerce Park at DFW Freeport v. Mardian Constr. Co.*, 729 F.2d 334, 340 (5th Cir. 1984); *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. 1. The Court finds that the parties have fully briefed the issues and submitted affidavits and, as set forth below, the parties have raised no disputed issues of fact going to the issue of the arbitration clause therefore the Court will decide this issue on the briefs as ordered. *See* Fed. R. Civ. P. 78; E.D.Mich. LR 7.1(e); (Docket no. 23).

### D.  *Whether The Parties Had A Binding Agreement To Arbitrate*

The district court must make "a number of threshold determinations before compelling arbitration." *Fazio v. Lehman Bros.*, 340 F.3d 386, 392 (6th Cir. 2003). The district court must determine: (1) Whether the parties agreed to arbitration; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) whether to stay the remainder of the proceedings pending arbitration if it concludes that some, but not all, of the claims in the action are subject to arbitration. *See id.* "[A]ny doubts regarding arbitrability should be resolved in favor of arbitration." *Id.*

### 1. Michigan Law Applies To Determine General Contract Issues

The FAA preempts state law and policy regarding arbitration, however state law governs "in determining whether the arbitration clause itself was validly obtained, provided the contract law applied is general and not specific to arbitration clauses." *Id.* at 393. Neither party alleges that any law other than Michigan law applies in this action and in fact both parties cite to Michigan case law; therefore the Court applies Michigan law to the general contract issues. (Docket nos. 14 ¶ 4, 15 at 13-14); *see also Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007 (6th Cir. 2003). Although Michigan law applies to generally applicable contract defenses, "the FAA governs the enforceability of arbitration clauses generally . . . and expresses a 'liberal federal policy favoring arbitration agreements' that must be taken into account even when state-law issues are presented." *Inland Bulk Transfer Co.,* 332 F.3d at 1014.

### 2. Whether The Parties Agreed To Arbitrate

The role of a federal court in determining an application for stay under the FAA is very limited. "To the extent that factual issues are relevant, they must relate directly to the formation and performance of the arbitration clause itself." *Commerce Park,* 729 F.2d at 341. "[G]enerally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004). "[A] court can decline to enforce an arbitration agreement under the FAA only if the plaintiffs can point to a generally applicable principle of contract law under which the agreement could be revoked." *Samadi v. MBNA America Bank, N.A.*, 178 Fed. Appx. 863, 865 (11th Cir. 2006).

Neither party has provided a copy of the initial account agreement in place in 1980 when Plaintiff Gilbertson opened the account. Plaintiffs in their Response Brief argue that Defendant did not provide any evidence, including a signed contract, to support their position that Plaintiffs are bound by the arbitration provision when the account at issue was opened in 1980 with NBD, a predecessor to Bank One (predecessor to Defendant JP Morgan Chase). Plaintiffs deny that an arbitration agreement exists and further argue that without the original agreement, the bank cannot demonstrate that any later arbitration provision now governs the case. (Docket no. 15 ¶ 10).

Defendant provided a document purporting to be a deposit agreement and signature card dated February 20, 2001, bearing the signature "Mary F. Gilbertson" and noting a "[l]egal title change from Mary F. Gilbertson or Stanley A. Gilbertson," account no. 38840795. (Docket no. 16-3). Immediately above Plaintiff Gilbertson's signature, the card states "By signing below, the undersigned acknowledges receipt and agrees to the Terms and Conditions governing this account and authorizes the Bank to check the credit history of all account signers including the undersigned." (Docket no. 16-3). The second page of Defendant's exhibit, also dated February 20, 2001 and including the same account number, includes the signatures of both Plaintiffs Gilbertson and Novak and shows a BankOne logo. (Docket no. 16-3). Defendant provides by affidavits to its Motion its policies regarding the signature card and the terms and arbitration provisions in effect from 1998 through the date of Plaintiffs' alleged claims. (Docket nos. 14-3, 14-5).

Plaintiffs filed a Response to Errata to Defendant's Motion and provided Plaintiff Novak's affidavit stating that Plaintiff Gilbertson, her mother, has been diagnosed with Alzheimer's Disease and dementia and that Plaintiff Gilbertson "cannot remember what she signed in 2001, whether she was given a document containing terms and conditions, or what she understood at the time."

(Docket no. 18-5). This affidavit constitutes neither a denial that Plaintiff Gilbertson signed the signature card nor a denial that she received the Terms and Conditions as indicated on the card. It is not a statement that the signature on the card is not or does not appear to be Plaintiff Gilbertson's signature. It is a statement of Plaintiff Novak's knowledge of her mother's current condition and lack of ability to recall past events[3]. The affidavit fails to raise any questions of fact with regard to the signature card which Defendant provided. Further, Plaintiffs do not allege state law defenses to contract such as fraud, forgery, duress, mistake, lack of consideration or mutual obligation or unconscionability.

The absence of the 1980 Agreement between Plaintiff Gilbertson and Defendant's predecessor is not determinative on the issue of the existence of an arbitration agreement. "If parties to a prior agreement enter into a subsequent contract that completely covers the same subject, but the second agreement contains terms that are inconsistent with those of the prior agreement, and the two documents cannot stand together, the later agreement supercedes and rescinds the earlier agreement." *Omnicom of Michigan v. Giannetti Inv. Co.*, 221 Mich. App. 341, 347 (1997). Therefore, to the extent that Plaintiffs maintain that the arbitration provisions in subsequent agreements may be inconsistent with the 1980 agreement, the later agreements would not be invalidated. Any inconsistent provisions in a later agreement supercede and rescind the 1980 agreement.

---

[3] Plaintiffs in their Response to Errata also include an affidavit of their attorney stating that he does not remember seeing or receiving a copy of the signature card and arbitration provision which Defendant alleges it sent via fax to Plaintiffs' attorney in January 2007. However, this affidavit does not go to the issue of whether the parties have a valid agreement to arbitrate and does not raise a question of fact as to that issue. (Docket no. 18-7).

Under Michigan law, "Where one writing references another instrument for additional contract terms, the two writings should be read together." *Forge v. Smith*, 458 Mich. 198, 207 (1998). 9 U.S.C. § 2 requires that an arbitration agreement be in writing however "it does not require that it be signed by the parties." *Samadi*, 178 Fed. Appx. at 865 (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005)). The parties had a signed deposit agreement bearing Plaintiff Gilbertson's signature, dated February 20, 2001 and incorporating by reference the terms and conditions in effect at that time. Therefore, the 1998 arbitration provision discussed below was in effect on February 20, 2001 and it is incorporated by reference to the Terms and Conditions. (Docket no. 16-3, 14-3, 14-5, 14-6).

3. **Plaintiffs' Defense:** *Morrison Factors*

Plaintiffs argue that Defendant did not meet its burden to show that the deposit agreement and the signature card constitute a "knowing and voluntary waiver" of Plaintiffs' right to litigate their claims as required by *Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646 (6th Cir 2003). (Docket no. 15 at 6). *Morrison* set forth five factors for the court to consider in determining whether plaintiff waived her right to litigate her claims. *Id.* at 668. *Morrison* was a discrimination case brought by defendant's former employees. The *Morrison* court noted that the case required the court to "carefully reconcile 'the liberal federal policy favoring arbitration agreements' with the important rights created and protected by federal civil rights legislation." *Id.* at 652-53 (internal citations omitted). There is no indication that the *Morrison* factors are to be applied to an arbitration clause outside of the employment context and, in fact, the second *Morrison* factor asks the court to consider "whether the *employee* had an opportunity to consult with a lawyer," clearly not applicable to the case at bar. *See id.* at 668 (emphasis added). The underlying case from which *Morrison* draws the

five factors also arises in the employment context where there is particular concern that "employers do not defeat the policies of the ADEA and Title VII by taking advantage of their superior bargaining position or by overreaching." *See Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (1995). The Court does not find the *Morrison* factors applicable to the case at bar.

Plaintiffs rely on *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752 (6th Cir. 1985) for the premise that the applicable standard for determining whether a jury trial has been waived is whether the waiver was done knowingly, voluntarily and intentionally and that "whether this standard was met in a given case is a constitutional question separate and distinct from the operation of rules of substantive contract law like the parol evidence rule." *Id.* at 755-56. *K.M.C.* involves a contractual provision agreeing to "waive all right to a trial by jury" and does not involve an arbitration provision or the FAA. *Id.* at 755. Furthermore, in *K.M.C.* the plaintiff alleged that there was an oral representation by defendant's representative that the waiver provision would not be enforced. *Id.* at 757. The court agreed that in the context of an express contractual waiver "the objecting party should have the burden of demonstrating that its consent to the provisions was not knowing and voluntary" and noted that plaintiff's president's uncontested affidavit regarding the statement was sufficient to satisfy that burden. *Id.* at 758.

For the reasons set forth above, the Court should find that by the language of the contract documents and the federal policy favoring arbitration, the February 20, 2001 deposit agreement signature card is an agreement with Plaintiff Gilbertson that incorporates by reference the 1998 arbitration clause set forth below, which was effective at the time Plaintiff Gilbertson executed the deposit agreement and constitutes a valid agreement to arbitrate.

### E. Plaintiffs' Claims Are Within The Scope Of The Arbitration Provision

**1. Multiple Arbitration Clauses Were In Effect During The Period At Issue**

Next, the Court must determine whether Plaintiffs' claims fall within the scope of the arbitration provision. Defendant provided by affidavit of its Vice-President Product Manager within the Deposit Products Group for JPMorgan Chase Bank, N.A., several arbitration clauses in effect from May 1, 1998 through those amended and effective on February 27, 2006. Fed. R. Civ. P. 43(e) provides that "[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition." *See also Samadi v. MBNA America Bank, N.A.*, 178 Fed. Appx. 863, 865-66 (11th Cir. 2006) (Plaintiff asserted he never received the notice of amendment but provided nothing more than his own assertion. Plaintiff never objected to defendant's affidavit or requested an evidentiary hearing and the "district court did not abuse its discretion in relying on the affidavit." *Id.* at 866.).

The Court's inquiry is limited to the validity of the arbitration clause. To the extent that questions are to be determined with regard to the remainder of the agreement, those are not before the Court. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403 (1967) ("in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").[4] There may be

---

[4] The 1998 Amendments also included the following revised provision:
The Bank may change the terms of this Agreement and any Agreement insert, including the "More Specifics" and "Miscellaneous Fees," upon notice mailed or delivered to any one of you at least 30 calendar days prior to the effective date of the change. (This change will enable the Bank to prepare personalized communication about future changes to your Account(s).). (Docket no. 14-6 at 2).
An arbitrator may conclude that this provision allowed unilateral amendment to the

some dispute about which arbitration clause applies in this matter, however that is not fatal to Defendant's Motion to Compel Arbitration. *See Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014-15 (6th Cir. 2003) (The parties exchanged Revision A and Revision B of their offer and only Revision A had attached to it terms and conditions containing an arbitration clause. The court concluded that "the parties' actions, the language of the contract documents, and the federal policy favoring arbitration all support the conclusion that the contract did incorporate an arbitration clause - - regardless of whether Revision A or Revision B was the operative contract between the parties." *Id.* at 1015.). As shown below, each of the arbitration clauses in effect from February 2001 through the period in which Plaintiffs' claims arose is broad enough in scope to include Plaintiffs' claims. **2. The Arbitration Clauses Are Broad**

Although Plaintiffs allege that they are not bound by the arbitration provision at issue, they do not allege that their claims fall outside the scope of any of the arbitration provisions provided by Defendant. The party resisting arbitration bears the burden of proving that Congress intended to preclude the claims at issue from arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647 (1991).

The Court has the authority to decide whether Plaintiffs' claims fall within the scope of the arbitration agreement. *See Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576 (6th Cir. 2003). "'A proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue.' If it could, then it may fall outside the scope of the arbitration agreement." *Id.* at 576 (citations omitted). "When a

---

Agreement, including the later amended arbitration provisions. This issue is properly reserved for the arbitrator upon this Court's finding that the parties had a binding arbitration provision.

contract contains an arbitration clause, there is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 576-77 (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)). "Where the arbitration clause is broad, only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration' will remove the dispute from consideration by the arbitrators." *Id.* at 577. "[A]n arbitration clause requiring arbitration of any dispute arising out of an agreement is 'extremely broad.'" *Id.* at 578 (language "arising out of" is broad enough to include a claim of fraudulent inducement of a contract).

Defendant provided Account Rules and Regulations in effect at the time of the alleged events giving rise to Plaintiffs' claims. Deck Aff. ¶ 5, Exs. C, D, E (Docket no. 14-5 ¶ 5). Defendant provides an affidavit of its Vice-President Product Manager within the Deposit Products Group for JPMorgan Chase Bank, N.A. showing that the 1998 Arbitration Provision provided with Defendant's Motion to Compel Arbitration, Deck Aff. Ex. A, was effective from May 1, 1998 until June 2005. The 1998 Arbitration Provision provides:

> Either party may, prior to the rendering of a judgment on any claim, dispute or controversy of any nature, whether asserted individually or jointly ("Claim") by either you or the Bank against the other, or against the employees, agents or assigns of the other, **arising from or relating in any way to this Agreement or your Account**, including Claims regarding the applicability of this arbitration provision or the validity of the entire Agreement, elect to have such claim resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure in effect at the time the claim is filed.

(Docket no. 14-5, 14-6). This is the same arbitration provision that appears in the Account Rules and Regulations dated January 18, 2005. *See* Deck Aff. Ex. C (Docket no. 14-8 at 19). The 1998 Arbitration Provision was amended effective June 2005. *See* Deck Aff. at ¶ 4, Ex. B (Docket nos.

-13-

14-5, 14-7). Defendant also provided two other arbitration provisions dated August 15, 2005 and July 16, 2006. *See* Deck Aff. Exs D and E. (Docket nos. 14-9 at 20, 14-10 at 33).

Despite some differences between the arbitration provisions, each provision includes within its definition of "Claims" any claims, dispute or controversy "arising from or relating in any way to this Agreement." This is a broad arbitration clause. *See Highlands Wellmont*, 350 F.3d at 578. Each of the arbitration provisions also applies to all Claims relating to the Account. Similarly, "relating to the Account" is a broad arbitration clause. *See id.* at 577 n.5 (citation omitted) ("phrase 'arising hereunder' covers a much narrower range of disputes than the phrase 'arising out of or relating to'"); *see also AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986).

Plaintiffs' federal statutory claim under the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. 1693f, is related to Plaintiffs' account and the parties' relationship as financial institution and consumer that stems from their agreement. Plaintiffs' EFTA claim cannot be maintained without reference to their account and their relationship with Defendant. Furthermore, claims under the EFTA are not exempt from arbitration. *See Johnson v. West Suburban Bank*, 225 F.3d 366, 379 (3rd Cir. 2000).

Plaintiffs remaining claims include claims under Michigan's Uniform Commercial Code ("U.C.C.") and a claim for common law negligence. Plaintiffs' claim for conversion under M.C.L. § 440.3420 cannot be maintained without reference to the account from which the forged checks were drawn and Plaintiffs' relationship with Defendant as the bank which allegedly made payment on the forged checks. Plaintiffs' claim for recredit of account under M.C.L. § 440.4401 involves a bank-customer relationship and therefore cannot be maintained without referencing the

relationship between the parties arising from their agreement. Similarly, this claim directly involves Plaintiffs' account.

In the claims for negligence under M.C.L. § 440.3404(4) and common law negligence, Plaintiffs allege that Defendant owed a duty to Plaintiffs "as joint owners of bank account #38840795 to exercise ordinary care with regard to the personal and commercial banking transactions it conducted as depository bank and payor bank with respect to that account." (Docket no. 1 ¶¶ 35, 40). Plaintiffs' negligence claims involve the relationship between the parties arising from the agreement between the parties and the claims are related to Plaintiffs' account, from which the alleged forged checks were drawn. The Court should find that Plaintiffs' EFTA claim, Michigan U.C.C. claims for conversion, recredit of account and negligence and common law negligence claim are within the scope of the arbitration provisions cited herein, including the 1998 Arbitration Provision in effect when Plaintiff Gilbertson entered into the deposit agreement dated February 20, 2001.

### F. *Defendant Did Not Waive Its Right To Arbitrate*

Plaintiffs argue that even if there is a valid agreement to arbitrate, Defendant waived its right to arbitrate by delaying in filing its Motion to Compel Arbitration. Plaintiffs filed their Complaint on October 25, 2006 from which time the parties engaged in negotiations. (Docket no. 15 at 3). Plaintiffs admit that Defendant mentioned arbitration for the first time on January 5, 2007 during negotiations and notified the Plaintiffs that the claims may be subject to an arbitration agreement. (Docket no. 15 at 3).

> An agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon. However, waiver may not be inferred from the fact that a party does not rely exclusively on the arbitration

provisions of a contract, but attempts to meet all issues raised in litigation between it and another party to the agreement.

*Germany v. River Terminal Ry. Co.*, 477 F.2d 546, 547 (6th Cir. 1973) (citations omitted).

Factors to consider when evaluating whether a party's actions form an implied waiver are the nature and extent of the party's participation in the litigation, the degree of prejudice, if any, inflicted by the party's actions upon the opposing party, and the overall reasonableness of the party's actions in light of the totality of the circumstances.

*McBeth Corp. v. Hooper Holmes Healthcare, Inc.*, 1995 U.S. Dist. LEXIS 14403 *9 (W.D. Mich. Aug. 14, 1995).

Like *McBeth*, Defendant has engaged only minimally in the litigation proceedings in this action. Defendant filed its answer on January 25, 2007 and expressly raised the arbitration provision as an affirmative defense. (Docket no. 5 at 6 ¶ 4). Defendant filed only two motions in this action, the Motion to Compel Arbitration and Abate Pending Action on April 25, 2007 and a Motion to Strike Certain Exhibits to "Plaintiff's (sic) Response to Defendant's Motion, and Subsequent to Plaintiffs' Response to Compel Arbitration and Abate Pending Action" on June 7, 2007. (Docket nos. 14, 19). The Court should find that Defendant's actions do not demonstrate complete inconsistency with its right to arbitrate.

Plaintiffs allege that they were prejudiced by Defendant's delays in the amount of $4,270.50. (Docket no. 18 at 3). Plaintiffs allege that the late production of the signature card with Defendant's Errata also prejudiced them because Plaintiffs initially responded to Defendant's Motion to Compel "based on the Plaintiffs' understanding of the existing documents when in fact the most relevant document to the Defendant's Motion was not even attached. Had this document been produced at the outset of litigation in a timely fashion, Plaintiffs might have saved extensive attorney fees and costs." (Docket no. 18 at 2-3). As discussed above, Defendant filed the Errata when the mistake in

exhibits was brought to its attention and that document is now part of the record. Further, Plaintiffs filed a Response to Errata and therefore had the opportunity to address any new issues raised by Defendant's inclusion of the documents which had been referenced yet inadvertently excluded from the Motion to Compel Arbitration. (Docket no. 18). For the reasons set forth in *McBeth*, Plaintiffs' costs incurred to date do not substantially prejudice them and Defendant has not waived its right to arbitrate this matter.

### G. Plaintiffs' Request To Recover Costs And Request To Deem Requests For Admission Admitted

Plaintiffs ask for their litigation fees for actual prejudice incurred by Defendant's delay in moving to arbitrate. As set forth above, the Court does not find that Plaintiffs were prejudiced by Defendant filing its Motion in April 2007. Plaintiffs' request for costs should be denied. Plaintiffs further ask that the Court rule that Plaintiffs' Requests for Admission to Defendant be deemed admitted. Plaintiffs did not file a motion for this relief and the issue is not properly before the Court. Plaintiffs' request to deem their Requests for Admission admitted should be denied.

### H. Defendant's Motion To Strike Certain Exhibits To "Plaintiff's (sic) Response To Defendant's Motion, And Subsequent To Plaintiffs' Response To Compel Arbitration And Abate Pending Action" (Docket no. 19)

Defendant moves to strike the affidavits of Plaintiffs' attorney A. Mayoras and Plaintiff Novak. (Docket no. 19). Defendant asserts the Mayoras Affidavit contains hearsay, "out-of-court averments made by his assistants offered to prove the truth of the averments." Defendant further alleges that the Mayoras Affidavit contains irrelevant assertions. The Mayoras affidavit does not state that the affiant did not receive the documents at issue, Ex. 9 to Defendant's Reply Brief. The affiant merely states that he was "surprised to learn that the Defendant claimed that the documents attached therein had been allegedly faxed" to his office in January 2007. (Docket no. 18-7 ¶ 2).

Defendant further alleges that neither he nor his legal assistance (sic) "ever remember seeing or receiving a copy of that" and that they have both check through the file and do not have a copy. (Docket no. 18-7 ¶ 3). The issue of when and whether Plaintiffs' attorney received the documents in January 2007 does not have an effect on the resolution of the issues herein.

Defendant next alleges that Plaintiff Novak's Affidavit contains irrelevant hearsay and should be stricken. The Novak Affidavit attests to Plaintiff Novak's knowledge of Plaintiff Gilbertson's condition and a statement regarding Plaintiff Gilbertson that "[b]ased on her condition, she cannot remember what she signed in 2001, whether she was given a document containing terms and conditions, or what she understood at the time." (Docket no. 18-5). As set forth above, the Novak Affidavit does not raise a question of fact as to the validity of the arbitration provision in the 2001 Deposit Agreement between the parties.

Finally, Defendant asks the Court to strike Plaintiffs' Breakdown of the Fees and Costs filed with its Response to Errata to Defendant's Motion. (Docket no. 18-4). The Court should deny Plaintiffs' request for fees and costs, rendering this issue moot. The Court should deny Defendant's Motion to Strike.

### III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve

all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 04, 2008                s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 07, 2008                s/ Lisa C. Bartlett
                                       Courtroom Deputy